Next, please call for oral argument. He's been arraigned in detention of Davis. Counsel, whenever you're ready, you may proceed. Thank you, Your Honor. Good morning. It takes a long time, but it hasn't. I know it. I can't cover all the ground I have to cover. I'm going to get down to the sewer. It's about 23 hours. I'm sorry. My name is Curtis Bluff for the record, and I'm here for Earl Davis who filed a petition for release from the Department of Human Services on the grounds that he was below risk to reoffend. He's incarcerated under the Sexually Violent Persons Act. It's a civil commitment. And I want the court to understand what happens in these cases. I have no clue, and I think the more that you know about how this works, the better it is for my client. Now, does any of us believe that you can, by going to college or whatever experience, get to the point where you can look at a man and tell him what he's going to do in the future? Because I don't. I think that's the one thing we have to give up on. My mom said that I'm going to be serving my life to death, and my dad's trying to get me on taxes, and it's like it goes on. I mean, that's not a joke. So, how do the psychologists do it? How do they figure out who's at risk to reoffend, or how much of a risk they are? Because there are some risks. The only no risk is when you stop breathing. Well, what I've got here is the coding form for the static 99R. And some people call it a test, and some people call it a tool. And I'm sorry to call it a thing on a jig, because it's certainly not a test, but a tool. But this is, of the thing on the jigs, the tester tools, this is, right now, the state of the art. It's a revision that has the R, static 99R. It's a revision of the previous static 99, and you'll find this same page on the very last page of the thick appendix, the first appendix that I filed in this case. So, if you look at this, you can see that you don't need to look into the man's soul to figure out what's going on. Like, if you look at number two here, ever lived with a lover for at least two years? Well, if it's yes, don't give him a point. If it's no, give him a point. Points is bad. And how do you find that out? You have his file. And, by the way, his file is how we got there in the first place, because this is the same thing they do when they decide if he's going to be a sexually violent person, if he's going to be committed. Now, you get down to number 10, any male victims, okay? No. Yes. Well, yes is a point. No is no points. But the point is, there's no gazing into the man's eyes, gazing into his soul. He grabbed his file. Theoretically, you could do this without even needing it. The...this form, this particular test is, like I say, the state of the art. But, until recently, it didn't exist. Until recently, the first two lines, the very top, were not there. Excuse me, not the first two. I knew that was going to be a problem. I'll try not to make this fun. These lines right here, negative points were not there. That's new. That's the only thing that's arrived on this form. That's what earns it the R, is that through studies, the people that developed Static 99, continuing to evaluate while he was doing the job, discovered that it was over-predicting re-events for people of certain age. And they added those two lines. And the writings, and they do a lot of writings, these guys do treatises after treatises, are that you don't use Static 99 anymore. In other words, they've discredited the old tool. Now, you're supposed to adjust for age. In this case, there were three tools used. The only one used for Mr. Davis was this one. The State Department of Human Services used this one, and the old one, and something called the MN-SOST. That's an acronym, obviously. The S-O is a sexual offender. The S-T, I don't remember. Not important enough to remember. But the M-N is important, because the M-N is Minnesota. MN-SOST has never been approved for use outside of Minnesota. The writers that have provided them all in the appendix say that Minnesota is a unique penal community, and that MN-SOST shouldn't be used anywhere else. But what MN-SOST is basically the same as this. Basically the same factors you go through, make your marks, and add up the total. So, when I got this case, I didn't know anything about this stuff. I didn't know whether it was even a test or a tool or a thing. And I Googled these tests. And that's how I found all of this out. And that's how I learned that the only valid test given in this case was this one. And that the writers seemed to agree that you don't use the old one, and that you don't use the MN-SOST, not one at all. The funny thing is that the psychologists agree, the DHS psychologists and my guy's psychologists agree that under this one, he's low risk. He's 70 years old. And I don't want to get up here and say, a 70-year-old man can't prove a fact, but I am 70. But you can't tell just by staring at him that you've got to have some science to go by and that even a PhD has got to go by the statistics. And that's the only valid statistics that we have in this case. Now, I was appointed to another SVP case before this court. And that's what generated the supplemental appendix in this case. A gentleman named Scott Roots. And Scott Roots is not of an age where he's in line for those negative three points. He's not going to be for quite some time. And actually he's doing so well that probably the outpour factors in. But, in Mr. Roots' case, his psychologist used this test and DHS, two psychologists, also just used this. So, why didn't the DHS psychologists use 99, no 99 in that one? Why didn't they use MSSAS in that one? Because they didn't need to. They're going to keep binging with this one. And that's what I had to tell this court about. It's a brand match for free. It's not about facts. It's not about the law. It's about what the facts mean. And what I found is that DHS apparently don't like the results that they're getting in this case for the old man, at least for this old man. And so they're changing tests. They manipulated the test to get the answer that they wanted to get. Now, psychologists threw in some other factors that aren't listed here. The DHS psychologist did. He said, well, there's this and there's that. That you've got to take into account to make this unique. But he couldn't. He couldn't quantify it in any way. He couldn't show how they add to the risk, how much. It was his wild card, I would call it, his wild card really, explaining why he wasn't bound by this. He's a man of principles. He doesn't want to just say I got nothing. He's trying to get something to hang his hand on. Well, if we were to say that this test is the only predictor and that has to be used, then why would we even need anybody's testimony? Right? And we have a standard of review here, manifest way of the evidence, and here the trial judge did hear two different experts and the state's expert says, in addition to this, I'm using my clinical judgment. And in my opinion, in this case, et cetera. I understand your argument. It's very compelling. But what about that? Well, Justice Stewart, I'm not sure what you can do about it. I see your point. I'm not sure what you can do about it. Darling, I want to make sure you understand it before you dump it, if that's what you do. I'm not certain that you have to do it. I think I found a scam here. It's if you understand what I understand about these tests, it hits you right in the eyes. You shouldn't do this. They're playing a trick on this man. And nobody checked it out. I checked it out. The state doesn't disagree with anything I said. And it's all in the appendix of Hennessey's for you to read. I don't know what you're doing. I really don't. Maybe if it's not a darn thing you can do, maybe he's just going to rob them. You're 79. What about the trial judge indicated that he looked at everything. And the last sentence, basically he puts a great weight on this individual's age as a factor in these tests. But he talked about specific individual diagnosis, treatment history, offense history, risk factors. And additional protective factor assessment, he seemed to have looked at this globally as opposed to just focusing on either expert, weighed them in light of the non-psychological aspects such as and made a decision. Maybe you're bound by that, Your Honor. I'm sorry? Maybe you're bound by that. Do you have any further comments? Well, only that you might well be bound by that. And you might well be bound by the DHS expert. However, I guess all I can ask for is that before you dump us, that you understand why I'm saying what I'm saying. And dump us at least for the right reasons. And maybe you won't dump us.  Thank you, Your Honor. Counsel? Good morning. I'm here to take the Court of Counsel. I'm Assistant Attorney General Catherine Dorge. I'm here with the people in this case. Could you speak up a little bit louder? I'm here with the people. We're asking that this Court affirm the Respondent's petition for discharge from his commitment as a sexually violent person. The hearing on this discharge petition represented the classic battle of the experts. The people had Dr. Swear, Respondent had Dr. Witherspoon, and the trial judge plainly credited the people's expert, Dr. Swear. Dr. Swear's testimony, established by clear and convincing evidence that Respondent remains an SVP, he diagnosed Respondent with three developmental disorders, pedophilia, alcohol abuse in a controlled environment, and personality disorder, not otherwise specialized with antisocial and narcissistic features. He conducted a risk assessment. He used three actuarial risk assessment instruments, the static 99, the 99R, Dr. Swear did use the 99R, and he also used the MNSASR, the Minnesota Sex Offender Screening Tool, revised. He testified that the static family is the number one most accepted and the Minnesota test the second most accepted. I want to make sure that you understand that the experts don't use actuarials alone. They conduct what they call a guided clinical risk assessment. They start with a baseline that they get from the actuarial. All the experts can see that none of these is perfect. They're not perfect predictors. And each of them has certain infirmities and validity problems. Some score better for extra-familial sex offenders, and some are better for rapists. So they all have various shortcomings. So that's why the experts also use their guided clinical judgment, and they look at additional factors. They look at additional risk factors that the research has shown causes the offenders to re-offend. And they also look at protective factors. They consider age, they consider the offender's potential health. If someone is extremely infirm to the degree that they simply couldn't re-offend, that's certainly going to reduce their risk level. And they also look at treatment. And that's important here, because although Dr. Scrooge said, yes, on the actuarial list, and he conceded that age does reduce risk, they still have to figure out how it works exactly. Some of the tests, you know, have it drop off. Some people agree that it probably is more linear. But anyway, everybody agrees that responding is entitled to some reduction of risk for his age. But Dr. Scrooge testified that he's not entitled to any risk reduction below that accounted for by the actuarials, because he's a pedophile who's never had treatment. A pedophilia simply does not spontaneously prevent. Excuse me. My understanding is he's refused treatment all along. He has refused treatment while he's been in DHS. He had some treatment while he was on a parole in 1996 to 1997 for about six months. But he was noncompliant, and they revoked that parole. Well, if lack of treatment or refusal of treatment is a significant factor in re-offending, okay, then I wonder why it's not something you get points for on the static 99R. None of these actuarial links, I don't know that I can answer that for certain, but I can tell you this, that none of the actuarial instruments accounts for all possible variables. The doctors testified that they just pick out a couple that strongly correlate with re-offends. None of them accounts for them all, and that's why they use this guided clinical assessment that counts for these other... So these are static things that can't be changed, too. These are all static things in the static 99. And so treatment obviously has control over that. That would be a dynamic factor that he could change. So that's accounted for in that portion of the clinical risk assessment. I think there's an underlying concern here. I think at least certainly Mr. Blood would argue that this man's being punished because he's not playing ball with Department of Human Services. He refuses treatment, and they're not going to let him out unless he knuckles under and plays ball and accepts treatment. It certainly wasn't... There's no testimony to that effect at all in the record. Dr. Swear's concern was that pedophiles act on these urges. And I would point out, too, the respondent wasn't a very young man when he committed his two offenses. He was 37 when he committed the first and 43 when he committed the second. And he hasn't had any treatment for this particular mental disorder, and that the personality disorders and the alcohol abuse act as disinhibitors and cause him to act on those pedophilic urges. Yeah, it's a significant thing. He was convicted of crimes. He was sentenced. He served his entire sentence. Absolutely, yes. But under the Sexually Violent Persons Act, now he has an indefinite commitment, and he's now 70. He's been with DHS how long? 14 years or something like that? We have to have a concern here about somebody basically getting life in prison. Well, I think it's important, Your Honor, to step back a second. Yes, he committed the offense. He raped his I believe she was 5 or 6-year-old daughter, and he did time for that offense. But his current commitment is a straight civil commitment based on the fact. And it's just a special brand of civil commitment for people who are, you know, have been identified and adjudicated sexually violent and predicted that they have a mental disorder and that they're a danger to themselves or others because they are, you know, prone to commit sex offenses. Well, and the State's burden is by clear and convincing evidence in a circumstance where every expert agrees that on the primary test to indicate recidivism, he scores low. But in this case, the State says, but we're not going to use that test here. I would disagree with you on several points. One, Dr. Swearer did use the 99R. He just used it amongst some others. Respondent's own expert did not use the 99R. He chose to use the static 2002R because he felt that it was more recent and the one that should be used. Both of the experts I'll point out at this point said, you know, there's disagreement, there's professional disagreement on all these points, and it's not wrong for, and Witherspoon testified, it's not wrong for Swearer to use the ones he did. Swearer said it's not wrong for Witherspoon to use the ones he did, but And the only difference between the two is that the 99R uses age as a factor. The respondent is 70, so the State's expert says we shouldn't use the one that considers age as a factor. He didn't say we shouldn't use it. He used it, he actually used it, he just considered it part of performing the baseline risk. And the 2002R that respondent's own expert used scored him at a higher risk. He scored him at a low, moderate risk. So that is why, probably why respondent is not arguing anything about Dr. Witherspoon's testimony, because he actually scored him at a higher risk on the risk assessment instrument that he chose to use. But anyway, that's just one portion of the assessment. And I think what I want to leave you with saying is that none of this is in the record, but what respondent is attempting to do here is impeach Dr. Swearer with the testimony and the articles in his appendix. And I'd also say, too, that the expert acknowledged all the various shortcomings of the actuaries, and what they did is use them as a baseline prediction of risk. They looked at the additional factors, so Mr. Davis had an elevated score on a test that predicts whether someone is a psychopath. They said that increased his level of risk. Personality disorder, substance abuse, and the fact that he sees himself as no risk to re-offend, all of these are dynamic factors that the literature shows increase one's level of risk to re-offend. And so if this Court has no further questions, we'd ask that you affirm the search. I don't think we need to thank the counsel. Counsel? State's right. I neglected that. It was the 2002 version that our witness used. It came to the same result. And it should have. I mean, it works the same way. Justice Stewart, those are good questions. I don't know that I can tell the Court anything else. I mean, you understand the argument. You understand what the problems are. That's right. If, as our expert says, or we have to consider both, what happened to the one-on-one points rule? I mean, lip service is all it got. Right, he was never treated. He was paroled and violated in 1997 for failing to get treated, which was a condition of his parole. And so he's been off the streets for 17 years. Do you disagree with the proposition that the State argued that he has basically refused treatment? No. And he'll be refused his dying breath in the agency. See, that's the first step. You can't get treatment unless you admit what you've done. Exactly. People that won't will never have treatment. I like the question about where's treatment on here. And that's right. Where is it? And how come even the State's expert couldn't come up with where's treatment? Can you imagine what that does to DHS? I mean, they get their paychecks because they arrange treatment and get treatment. What if you could get out at age 60 without treatment? What would that do to us? I mean, we have a perfectly, perfectly good industry here in the White Record. Well, I mean, there's motivation here. What can this Court do? Well, I guess you could reverse. I frankly have great misgivings that you would. You have authority. You could order a hearing. This man is deprived of his liberty. This man has constitutional right to effective assistance of counsel. Apparently, the Circuit Court didn't hear this. I think this Court has the authority to send this back, which might be a more palatable way to go. Under the Supreme Court rules, your authority is vast. You could do that. It might interest Springfield in the case. But unless there are other questions, I think we actually heard some great questions. Thank you, Counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement. Thank you.